UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

NORMA ALVAREZ and TIFFANY
BAEZ,

     Plaintiffs,

v.

CITY OF ATLANTIC CITY and
OFFICER JOSE GONZALEZ,

     Defendants.

1:15-cv-02061-NLH-JS

**OPINION**

**APPEARANCES:**

DAVID R. CASTELLANI
CASTELLANI LAW FIRM, LLC
450 TILTON ROAD
SUITE 245
NORTHFIELD, NJ 08225
    On behalf of Plaintiffs

MORRISON KENT FAIRBAIRN
MICHAEL A. ARMSTRONG & ASSOCIATES, LLC
79 MAINBRIDGE LANE
WILLINGBORO, NJ 08046
    On behalf of Defendant City of Atlantic City

TRACY L. RILEY
RACHEL M. CONTE
LAW OFFICES OF RILEY & RILEY
100 HIGH STREET
SUITE 302
MT. HOLLY, NJ 08060
      On behalf of Defendant Officer Jose Gonzalez

**HILLMAN**, District Judge

    This case involves claims of excessive force by an Atlantic

City police officer at an Atlantic City casino nightclub, and

claims of municipal liability against the City of Atlantic City
for having a policy and custom of condoning the use of excessive
force.  Presently before the Court is the motion of the
individual police officer defendant for summary judgment in his
favor.  For the reasons expressed below, Defendant's motion will
be denied.

**<u>BACKGROUND</u>**

In the early morning hours of March 23, 2013, Plaintiff
Tiffany Baez and a group of female friends, including former
plaintiff Norma Alvarez who has now settled her claims with the
defendants, went to the Providence nightclub in the Tropicana
Hotel and Casino in Atlantic City, New Jersey.  An incident took
place in the women's restroom between one of the members of
Baez's group and the ladies' room attendant.[1]  As a result of
that incident, a Providence security guard and defendant Officer
Jose Gonzalez, an Atlantic City police officer who was working a
special detail at the nightclub, told the entire group to leave
the club.  The women left the club through the valet area
without incident, and Baez asked Gonzalez how they could reenter

---

[1] Defendant contends that one of the members of the group, but
not Baez or Alvarez, stole the money out of the attendant's tip
jar.

the casino.  A few minutes later, Baez and the rest of the group returned to the Providence nightclub.

Those are the only relevant facts that the parties agree on with regard to what occurred at the nightclub.  Baez claims that her acquaintance, a Providence security guard named Nestor stationed at the entrance, allowed Baez and the group to reenter the club.  Baez claims that even though the group was talking peacefully between themselves, and she had only consumed one or two alcoholic drinks the entire night, within minutes Gonzalez approached them to again escort them from the club.  Because the music was so loud, Baez leaned into Gonzalez to tell him that they were going to leave when suddenly and without provocation Gonzalez pushed her and Alvarez into the crowd of people, causing them to stumble backwards.

Baez further claims that Gonzalez hit her hand, and then punched her directly in the face, causing her to fall to the ground, where Gonzalez pounced on her with his knee on her back, and continued to punch her numerous times in the face.  Baez asserts that Gonzalez ripped her shirt tight to her neck, popping the first button, in effect choking her.  Gonzalez then handcuffed Baez while she was on the ground, and directed her to a back room, where Baez claims that Gonzalez stated, "That's right bitch, you just got fucked by a cop."

3

In contrast to Baez's account, Gonzalez claims that the women, including Baez, were visibly intoxicated and "mouthy" from the time they were escorted out of the nightclub and also when they returned. Gonzalez provides the testimony of the security guard Nestor, who states that he did not allow Baez and her friends back into the club. However they got back in, Gonzalez was again asked by Providence security for assistance in escorting the group out of the club. When Gonzalez approached the group and told them to leave, everyone ignored his command. He claims that Baez moved toward him and shouted, "Get the fuck off my girl," referring to Alvarez. Gonzalez claims that Baez used the palm of her hand to strike him, which caused his radio mic to fall to the ground. Gonzalez claims that he tried to create space between him and Baez by using a swiping motion. Gonzalez claims that Baez grabbed onto his shirt, at which time he struck her one time, causing her to stumble backwards. Because of Baez's grip on his shirt, Gonzalez stumbled with her onto the ground. Gonzalez struggled with Baez before he was finally able to handcuff her and bring her into a back room for transport to the police station.

From that point, Baez was taken to the Atlantic City Police Department, locked in a holding cell, and then transported to the Atlantic City Medical Center emergency room to be treated

4

for her injuries.  After receiving medical care, Baez went to
the Atlantic County jail, where $15,000 bail was set.  Baez was
indicted for aggravated assault and resisting arrest.  After
being initially rejected from the pre-trial intervention
program, a judge ordered that Baez be permitted to enter the PTI
program.  Baez brought criminal charges against Gonzalez for
assault.  The matter was tried before a municipal court judge,
who granted Gonzalez's motion to dismiss, finding him not guilty
of assault.

Based on these events, Baez brought suit against Gonzalez
and the City of Atlantic for various constitutional and state
law violations.  By way of stipulation, the remaining claims in
the case are for violation of Baez's Fourth Amendment rights due
to Gonzalez's alleged use of excessive force and Atlantic City's
policies and customs which plaintiff contends condone its
officers' use of excessive force.[2]

---

[2] Baez's claims against Atlantic City are premised on <u>Monell v.
New York City Dep't of Social Services</u>, 436 U.S. 658, 690
(1978), which provides that local governments cannot be held
liable for the actions of their employees solely based on the
doctrine of *respondeat superior*, but rather, in order to
successfully state a claim for municipal liability, a plaintiff
must allege that the employees' actions were pursuant to a
policy or custom of the municipality itself.  Atlantic City has
not moved for summary judgment on Baez's <u>Monell</u> claims against
it.

Gonzalez has moved for summary judgment in his favor, arguing that no reasonable juror could find that his use of force was unreasonable under the circumstances, as supported by his and his witnesses' testimony, along with the video surveillance that captured the events in the nightclub. Baez has opposed Gonzalez's motion, arguing that her version of what happened is supported by photographs of her injuries, her testimony, the testimony of Alvarez, and the video, which does not support Gonzalez's account of the incident as he contends.

## DISCUSSION

**A.  Jurisdiction**

Because Plaintiff has brought her claims pursuant to 42 U.S.C. § 1983, this Court has jurisdiction over these claims under 28 U.S.C. § 1331.[3]

**B.  Summary Judgment Standard**

Summary judgment is appropriate where the Court is satisfied that the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, or interrogatory answers,

---

[3] Plaintiff's complaint alleged violations of New Jersey state law, over which this Court exercised supplemental jurisdiction under 28 U.S.C. § 1367.  Plaintiff has stipulated to the dismissal of those state law claims.

demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(a).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor."  Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Id.  Thus, to withstand a properly

7

supported motion for summary judgment, the nonmoving party must
identify specific facts and affirmative evidence that contradict
those offered by the moving party.  Anderson, 477 U.S. at 256-
57.  A party opposing summary judgment must do more than just
rest upon mere allegations, general denials, or vague
statements.  Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir.
2001).

###    C.    Analysis

Section 1983 is not a source of substantive rights, but
provides a vehicle for vindicating the violation of other
federal rights.  Graham v. Connor, 490 U.S. 386, 393-94 (1989).
Section 1983 provides in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory . . . subjects, or causes to be
> subjected, any citizen of the United States or other
> person within the jurisdiction thereof to the
> deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable
> to the party injured in an action at law, suit in
> equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  To state a claim for relief under § 1983, a
plaintiff must allege the violation of a right secured by the
Constitution or laws of the United States, and that the alleged
deprivation was committed or caused by a person acting under
color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988);

Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

For Plaintiff's claims against the individual defendant acting in his personal capacity, the qualified immunity doctrine governs the analysis. "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." Reichle v. Howards, 566 U.S. 658, 132 S. Ct. 2088, 2093 (2012). In order to determine whether a government official is entitled to qualified immunity, two questions are to be asked: (1) has the plaintiff alleged or shown a violation of a constitutional right, and (2) is the right at issue "clearly established" at the time of the defendant's alleged misconduct? Pearson v. Callahan, 555 U.S. 223, 236 (2009). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." Id. It is the defendant's burden to establish entitlement to qualified immunity. Kopec v. Tate, 361 F.3d 772 (3d Cir. 2004).

In determining whether excessive force was used in effecting an arrest, the Fourth Amendment's "objective reasonableness" test is applied. Sharrar v. Felsing, 128 F.3d 810, 820-21 (3d Cir. 1997) (citing Graham v. Connor, 490 U.S.

386, 396 (1989)).  The objective reasonableness test "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. (relying on Graham, 490 U.S. at 396; Groman v. Township of Manalapan, 47 F.3d 628, 634 (3d Cir. 1995)).  "Other relevant factors include the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." Id.

Even though the determination of whether an officer acted objectively reasonably or made a reasonable mistake of law, and is thus entitled to qualified immunity, is a question of law that is properly answered by the court, not a jury, the Third Circuit has recognized that a judge should not decide the objective reasonableness issue until all the material historical facts are no longer in dispute. Curley v. Klem, 499 F.3d 199, 211, 211 n.12 (3d Cir. 2007).  To do this, "[a] judge may use special jury interrogatories, for instance, to permit the jury

to resolve the disputed facts upon which the court can then determine, as a matter of law, the ultimate question of qualified immunity." Id. In other words, "[w]hen the ultimate question of the objective reasonableness of an officer's behavior involves tightly intertwined issues of fact and law, it may be permissible to utilize a jury in an advisory capacity, . . . but responsibility for answering that ultimate question remains with the court." Id.

The evidence in the record, most of which is in dispute in light of the two very different accounts of what occurred, prevents the Court from determining at this time whether Gonzalez's use of force was objectively reasonable. The Graham factors employed to determine the objective reasonableness of Gonzalez's actions cannot be assessed without the Court crediting one party's version of events over the other party's version, which is impermissible for the Court to do on summary judgment. A jury must weigh the credibility of the parties and their witnesses to determine what occurred between Baez and Gonzalez at the casino club that night.

Unlike the parties' and other witnesses' testimony, the video surveillance of the encounter, which is the primary piece of evidence in the case, is not subject to a credibility assessment. Gonzalez relies heavily on this video, arguing that

11

it clearly depicts what happened as he says it happened, and that the video supports that his use of force was reasonable. Baez, in contrast, argues that the video speaks for itself, it support her version of events, and it is subject to the review and perception of the jury.

The Court has viewed the video several times, and finds that a jury must watch and assess the footage because it is not as unequivocal as Gonzalez contends. A jury could find that it supports Baez's version of events rather than Gonzalez's, or a jury could interpret what it sees to support Gonzalez's account of what occurred over Baez's. Because the video could support various outcomes, a jury must decide which version to believe. Either way it decides, a jury's assessment of the video, in combination with the other evidence, including testimony, photographs, and other documents, must be performed so that the Court may make the ultimate determination as to whether Gonzalez's use of force on Baez was reasonable.[4]

---

[4] This is not a case where even if all of the plaintiff's claims are accepted as true, the defendant officer's actions could be found to be objectively reasonable. Cf. Couden v. Duffey, 412 F. App'x 476, 482 (3d Cir. 2011) (affirming the district court, which found that the facts, even when viewed most favorably to the plaintiff, did not support a claim of excessive force, as the officer's actions were objectively reasonable even if he acted as the plaintiff contended); Feldman v. Community College of Allegheny (CCAC), 85 F. App'x 821, 826 (3d Cir. 2004) ("[W]e agree with the District Court's assessment that, even accepting

Consequently, because disputed material facts must be resolved by a jury prior to the Court's determination of whether Gonzalez is entitled to qualified immunity, Gonzalez's motion for summary judgment must be denied.[5]

An appropriate Order will be entered.


Date: ___July 24, 2017___          ____s/ Noel L. Hillman___
At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.

---

Feldman's description of the arrest, the force resulted as part of the struggle and was not excessive in light of Feldman's physical resistance. The force was reasonable under *Groman* and fails to amount to a § 1983 violation."). In this case, if the Court accepted as true Baez's version of events, and also considered the photographs and medical records of her injuries, it would be clear that the force used under those circumstances would not be objectively reasonable.

[5] The parties do not dispute Baez's right to be free from excessive force in her seizure and subsequent arrest. Since that right is clearly established, it appears that if the Court ultimately determines that Gonzalez used excessive force on Baez, the second step of the analysis would be resolved against a finding of qualified immunity.