```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| NORMA ALVAREZ and TIFFANY BAEZ,<br><br>    Plaintiffs,<br><br>v.<br><br>CITY OF ATLANTIC CITY and OFFICER JOSE GONZALEZ,<br><br>    Defendants. | 1:15-cv-02061-NLH-JS<br><br>**OPINION** |

**APPEARANCES:**
DAVID R. CASTELLANI
CASTELLANI LAW FIRM, LLC
450 TILTON ROAD
SUITE 245
NORTHFIELD, NJ 08225
    On behalf of Plaintiffs

MORRISON KENT FAIRBAIRN
MICHAEL A. ARMSTRONG & ASSOCIATES, LLC
79 MAINBRIDGE LANE
WILLINGBORO, NJ 08046
    On behalf of Defendant City of Atlantic City

TRACY L. RILEY
RACHEL M. CONTE
LAW OFFICES OF RILEY & RILEY
100 HIGH STREET
SUITE 302
MT. HOLLY, NJ 08060
      On behalf of Defendant Officer Jose Gonzalez

**HILLMAN**, District Judge

    This matter concerns claims by Plaintiff Tiffany Baez[1] of excessive use of force by Defendant Jose Gonzalez, an Atlantic

---
[1] Plaintiff Norma Alvarez settled her claims with Defendants.

City police officer, at an Atlantic City casino nightclub, and claims of municipal liability against the City of Atlantic City for having a policy and custom of condoning the use of excessive force. Presently before the Court is the motion of the Defendants to sever the trial of Baez's claims against Gonzalez and Atlantic City. For the reasons expressed below, Defendant's motion will be granted.

## BACKGROUND

In the early morning hours of March 23, 2013, Plaintiff and a group of female friends went to the Providence nightclub in the Tropicana Hotel and Casino in Atlantic City, New Jersey. An incident took place in the women's restroom between one of the members of Baez's group and the ladies' room attendant. As a result of that incident, a Providence security guard and Gonzalez, an Atlantic City police officer who was working a special detail at the nightclub, told the entire group to leave the club. The women left the club without incident, but a few minutes later, Baez and the rest of the group returned. Within minutes Gonzalez approached them to again escort them from the club. An altercation ensued between Plaintiff and Gonzalez, which is the basis for Plaintiff's claims.[2] Plaintiff contends

---

[2] For a more detailed recitation of the parties' versions of what occurred, see the Court's July 24, 2017 Opinion, which denied

2

that Gonzalez violated her Fourth Amendment rights by using excessive force.  Plaintiff also contends that Atlantic City violated her Fourth Amendment rights due to its policies and customs which condone its officers' use of excessive force.[3]

Gonzalez moved for summary judgment, which the Court denied.[4]  (Docket No. 64, 65.)  The Court found that the evidence in the record, most of which was in dispute in light of the two very different accounts of what occurred, prevented the determination of whether Gonzalez's use of force was objectively reasonable.  (Docket No. 64 at 11.)  The Court also found that a video of the incident must be assessed by a jury because it could support various outcomes depending on how the jury viewed the video in combination with all the other evidence.  (Id. at 12.)

---

Gonzalez's motion for summary judgment.  (Docket No. 64.)

[3] Baez's claims against Atlantic City are premised on Monell v. New York City Dep't of Social Services, 436 U.S. 658, 690 (1978), which provides that local governments cannot be held liable for the actions of their employees solely based on the doctrine of *respondeat superior*, but rather, in order to successfully state a claim for municipal liability, a plaintiff must allege that the employees' actions were pursuant to a policy or custom of the municipality itself.

[4] Atlantic City did not file a motion for summary judgment.

The matter is set for trial, and Defendants have moved to sever the trial into two parts. Defendants request that Plaintiff's claims against Gonzalez be tried first, and then only proceed with Plaintiff's municipal liability claims against Atlantic City if Plaintiff prevails on her excessive force claim against Gonzalez. Defendants argue that courts routinely order bifurcation in this type of case to expedite and economize the trial to save the court's, jury's, and the parties' time and resources.

Defendants further contend that severing the excessive force claim from the municipal liability claim will prevent unfair prejudice to the individual officer defendant, where evidence of a policy and custom of the municipality will include unrelated internal affairs records and other excessive force incidents. Defendants also argue that bifurcation will not prejudice Plaintiff, and in fact will benefit Plaintiff because she will avoid presenting evidence that will be meaningless if the jury finds that Gonzalez did not use excessive force.

Plaintiff does not see it that way. Plaintiff points out other courts do not bifurcate similar cases because they do not view bifurcation as promoting quicker or more efficient trials. Plaintiff also argues that a viable municipal liability claim is

4

not dependent upon her first proving that Gonzalez violated her Fourth Amendment rights.

A motion for separate trials is governed by Fed. R. Civ. P. 42(b), which provides:

> For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial.

Fed. R. Civ. P. 42(b). The district court is given broad discretion in reaching its decision whether to order separate trials. Thabault v. Chait, 541 F.3d 512, 529 (3d Cir. 2008).

The Court finds that bifurcating the trial into two parts is appropriate here, but not entirely for the reasons argued by Defendants. Recently, this Court in two other cases ordered the plaintiffs' excessive force claims and municipal liability claims to be tried separately. See Harrison v. City of Atlantic City, et al., 1:14-cv-06292-NLH-AMD; Norman v. Haddon Township, et al., 1:14-cv-06034-NLH-JS. In Harrison, the Court explained:

> [T]he Court questions whether Plaintiff's Monell claims should not be decided until after Plaintiff's excessive force claims are resolved. In City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986), the Supreme Court stated,
>
>> Neither Monell v. New York City Dept. of Social Services, 436 U.S. 658 (1978), nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that

5

the officer inflicted no constitutional harm. If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point.

The Third Circuit has affirmed the application of Heller in § 1983 cases where the plaintiff alleged constitutional violations against individual police officers and also asserted a claim for municipality liability against the city under Monell. See, e.g., Smith v. Gransden, 553 F. App'x 173, 178 (3d Cir. 2014) ("Because we will not disturb the jury's verdict that Frampton is not liable for any constitutional violations, there can accordingly be no derivative municipal claim based on Frampton's actions. Further, to the extent that Smith argues that Camden is nevertheless liable under § 1983 because its unwritten policy caused a constitutional violation through officers on the scene other than Frampton, her argument is similarly unavailing, as it requires proof that a CPD officer on the scene violated Kashon Smith's constitutional rights by being deliberately indifferent to his medical needs. Here, the jury found Smith did not prove any officer violated Kashon Smith's rights and thus, Camden could not be found liable and we will not disturb the District Court's ruling in favor of Camden." (internal citations and quotations omitted)); Reiff v. Marks, 511 Fed. App'x 220, 222–23 (3d Cir. 2013) (affirming the district court's dismissal of the plaintiff's failure-to-train municipal liability claim against West Reading Borough after a jury trial determined that the defendant officer's use of a TASER on the plaintiff was reasonable use of force because a municipality may not be held liable on a failure to train theory when a jury has found that the plaintiff has suffered no constitutional violation).

In this case, if, after a jury has answered its special interrogatories as to Plaintiff's excessive force claims, the Court concludes that none of the defendant officers violated Plaintiff's Fourth Amendment rights and they are entitled to qualified immunity, the principle announced in Heller and applied by the Third Circuit would

appear to warrant the dismissal of Plaintiff's municipal liability claims against Atlantic City. It would seem to be, at a minimum, a waste of judicial resources to assess Plaintiff's Monell claims against Atlantic City now if such claims ultimately may not be viable.

Harrison, 1:14-cv-06292-NLH-AMD, Docket No. 186 at 19-22.

The Court directed the parties to show cause as to why the trial should not be bifurcated, and ultimately concluded that "bifurcation of Plaintiff's claims against Atlantic City is the proper course because it may ultimately conserve judicial resources and allow the Court a fuller and clearer assessment of Plaintiff's Monell claims after the jury resolves outstanding factual disputes involving the individual defendant officers' alleged wrongdoing." Harrison, 1:14-cv-06292-NLH-AMD, Docket No. 195 at 1-2.

That decision in Harrison cited to Norman, where the Court elaborated on the propriety of severing a plaintiff's claims against an individual officer from the plaintiff's claims against the municipality. In Norman, the Court made the same observations in support of bifurcation as in Harrison, see Norman, 1:14-cv-6034, Docket No. 97 at 34-35, and further noted:

> [I]f a jury concludes that the positioning of Norman in the police vehicle did not cause his death, then Haddon Township cannot be held liable for Norman's death based on its policies or training regarding a detainee's positioning in a police vehicle. Conversely, if a jury determines that Norman's death was caused by how he was placed in the police vehicle, Haddon Township could be liable if an

7

> infirm policy or training program on that issue is found to exist. This is true even if Benham and Sullivan are ultimately entitled to qualified immunity, because a jury may find that they properly followed Haddon Township's policy or training on detainee positioning, but that the policy or training itself was so inadequate that it violates the constitution. Haddon Township would not be liable under Monell, however, if Benham and Sullivan are found to have harmed Norman by how they positioned him in the police vehicle because they failed to follow a constitutionally appropriate policy or training on detainee positioning. These various scenarios - and there are many more depending on how the jury views the evidence - illustrate that a jury's resolution of the facts is a necessary prerequisite to Haddon Township's liability under Monell. See, e.g., Fagan v. City of Vineland, 22 F.3d 1283, 1292 (3d Cir. 1994) (in a case where a high-speed police pursuit of a car attempting to evade police officers crashed into an innocent bystander's vehicle, killing three people and injuring three people, and the survivors of the innocent bystanders brought § 1983 claims for substantive due process violations against the officers for their recklessness and the town for its lack of proper training on high-speed pursuits, the court noted that a finding of municipal liability did not depend automatically or necessarily on the liability of any police officer because, in a substantive due process case arising out of a police pursuit, an underlying constitutional tort can still exist even if no individual police officer violated the constitution so long as it could be shown that the plaintiff suffered the deprivation of life or liberty because the officer was following a city policy reflecting the city policymakers' deliberate indifference to constitutional rights, thus making the city directly liable under § 1983 for causing a violation of the plaintiff's Fourteenth Amendment rights – in other words, where "[t]he pursuing police officer is merely the causal conduit for the constitutional violation committed by the City").

Norman, 1:14-cv-6034, Docket No. 97 at 35 n.7.

The Court finds that the considerations expressed in Harrison and Norman are equally applicable to the case here.

8

Contrary to Defendants' argument, Atlantic City is not automatically off the hook for Plaintiff's municipal liability claims if Gonzalez is afforded qualified immunity for his actions. Even so, trying Plaintiff's excessive force claim against Gonzalez first, and having a jury resolve all the disputed facts so that the Court may make the qualified immunity determination, is a prerequisite to deciding whether Plaintiff's municipal liability claims against Atlantic City should proceed thereafter and on what basis. Thus, because the factors of Fed. R. Civ. P. 42(b) are met – separate trials would be more convenient for the parties and Court, avoid prejudice, and potentially expedite and economize the case - the Court finds that trying Plaintiff's excessive force claim against Gonzalez first, and separate from, Plaintiff's <u>Monell</u> claim against Atlantic City is warranted.[5]

An appropriate Order will be entered.

Date: <u>June 19, 2018</u>  <u>s/ Noel L. Hillman</u>
At Camden, New Jersey  NOEL L. HILLMAN, U.S.D.J.

---

[5] If the Court determines that Plaintiff's claim against Atlantic City shall proceed, the jury which heard Plaintiff's excessive force claim against Gonzalez will remain empaneled to hear Plaintiff's municipal liability claim, with no break in between the two phases.